IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS A. DRISCOLL, III,<br>　　　　Plaintiff,<br>　　v.<br><br>LINCOLN TECHNICAL INSTITUTE,<br>et al.,<br>　　　　Defendants. | CIVIL NO. 08-CV-2965 |

MEMORANDUM & ORDER

**RUFE, J.**　　　　　　　　　　　　　　　　　　　　　　　　　**March 30, 2010**

Before the Court is Defendant Lincoln Technical Institute's and Defendant Lincoln Educational Services Corporation's Motion for Summary Judgment.[1] Defendants (hereinafter "Lincoln") moved for summary judgment on Plaintiff's claims of race and gender discrimination and retaliation.[2] In response to the instant motion, Plaintiff voluntarily dismissed its race and gender discrimination claims (Counts III, IV, VII and VIII). Thus, what remains at issue is Lincoln's Motion for Summary Judgment on Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII")(Count V) and the Pennsylvania Human Relations Act ("PHRA") (Count VI). For the reasons set forth herein, Lincoln's Motion for Summary Judgment will be granted.

I. **FACTUAL BACKGROUND**

Plaintiff in this matter is a Caucasian male. He was formerly employed as the Director of

---

[1] Doc. No. 41.

[2] Previously, Plaintiff voluntarily dismissed Counts I and II (Age Discrimination).

1

Admissions at Lincoln Technical Institute. There, he supervised an all-female staff which included at least one African-American woman and one Vietnamese woman. In May 2007, another Lincoln employee, Barbara Dodd, who is an African-American woman, filed simultaneous Equal Employment Opportunity Commission ("EEOC") and PHRA complaints against Plaintiff because of two racially derogatory remarks he made to her. Dodd's complaint alleged that in September 2006 Driscoll told her and another African-American Admissions Office employee named Sabriya Williams that "black people love grape juice."[3] A month later, Dodd alleged, Driscoll said "I know you are back here for the watermelon" at a work-place party.[4] The Dodd complaints went on to say that Plaintiff retaliated against her for reporting these offensive remarks by continuously criticizing her job performance and asking her co-workers not to speak to her. Eventually, Dodd was terminated.

Initially Lincoln believed that Plaintiffs' remarks to Dodd were isolated incidents and did not evidence any serious problems with its Director of Admissions. Lincoln prepared to defend Plaintiff at a PHRA fact-finding conference scheduled for June 26, 2007.

Prior to the conference, James Tolbert, the Executive Director of Lincoln and one of Plaintiff's supervisors, told Plaintiff to provide copies of Dodd's complaints to two admissions office employees, Phoebe Tran and Deborah Mason, because Dodd's complaint mentioned them as witnesses to his behavior. Plaintiff was told that he should brief them on the complaint, answer any questions, and tell them to expect a meeting about the allegations. Plaintiff did as instructed. Sometime after this, the Vice President of Human Resources, Shelly Williams, initiated a telephone

---

[3] Doc. No. 42, Plaintiff's Exhibit 1; Doc. No. 43, Defendant's Exhibit 1.

[4] Id.

2

conference to discuss Dodd's complaint, in which Plaintiff participated. During that conference, Sabriya Williams confirmed hearing Plaintiff's remark about "grape juice," but no new allegations were raised regarding Plaintiff at that time.

Finally, on June 25, 2007, one day prior to the scheduled PHRA fact-finding conference, Vice President Shelly Williams and Executive Director James Tolbert[5] allegedly met with Plaintiff for fewer than five minutes.[6] Williams was allegedly displeased that Plaintiff planned to dispute the accuracy of the dates set forth in Dodd's EEOC complaint, with the hope of time-barring her complaints. Williams allegedly told Plaintiff "in no uncertain terms" that he was not to mention his dispute about the relevant dates at the fact-finding hearing.

Also on June 25, 2007, Williams and Tolbert met individually with four of the women Plaintiff supervised: Sabriya Wiliams, Deborah Mason, Diana Christy, and Phoebe Tran. During the course of these meetings, Plaintiff's superiors learned that he had, in fact, created a hostile work environment for his female employees. The women he supervised related numerous examples of harassing, offensive, abusive and threatening behaviors.[7] None had come forward previously due to fear of retaliation by Plaintiff.

Approximately five hours after Plaintiff's brief meeting with Williams and Tolbert on June

---

[5] Williams and Tolbert were initially named as defendants in this suit, but Plaintiff voluntarily dismissed the claims against them (see Doc. No. 23 and Doc. No. 24).

[6] Williams does not recall such a meeting, but for the purpose of this motion Lincoln does not dispute the allegation.

[7] Examples include offensive remarks such as "If I flip you over, you are all the same to me"; stating that the male employees have "no balls or testosterone, but all the women have dicks"; referring to an Asian employee as "my little yellow friend"; calling another employee a "fat pig"; telling female employees he was "black from the waist down"; and referring to his staff as "whores, bitches and liars." After Dodd made her complaints, he also made intimidating statements to his staff about "consequences" if they supported Dodd's claims or made adverse statements about him.

3

25, 2007, and "immediately after four female employees related numerous instances of harassing, offensive, abusive and threatening behaviors by Plaintiff while they were being prepared for the Fact Finding Conference,"[8] Plaintiff was terminated without any prior, progressive discipline. His termination notice indicated that Lincoln was terminating him for gross misconduct, including use of profane, abusive or threatening language or gestures or acting in an indecent or disrespectful manner, making disparaging remarks about Lincoln and its management, and harassing and threatening his coworkers.[9] Plaintiff now alleges that he was terminated in retaliation for his assistance in the investigation of Dodd's discrimination complaint against him, and that causation can be inferred from the close proximity in time (five hours) between his meeting with Tolbert and Williams and his termination.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[11] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury

---

[8] Defendant's Sur-Reply in Support of Motion for Summary Judgment at 1.

[9] Electronic Termination Form, Id. at Exhibit 2.

[10] Fed. R. Civ. P. 56(c) (2009 Revised).

[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

could return a verdict for the nonmoving party."[12]

A party moving for summary judgment must support its motion by reference to evidence which is capable of being admissible in a trial.[13] The nonmoving party must "set out specific facts showing a genuine issue for trial."[14] The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[15] The facts the nonmovant relies on for these purposes must also be demonstrated by evidence that is capable of being admissible in a trial.[16]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[17]

### III. DISCUSSION

Title VII prohibits employers from discriminating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

---

[12] Id.

[13] Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

[14] Fed. R. Civ. P. 56(e)(2).

[15] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

[16] Callahan, 182 F.3d at 252 n. 11.

[17] Anderson, 477 U.S. at 255.

subchapter."[18] The PHRA uses nearly identical language.[19] To establish a *prima facie* case of retaliation under Title VII or the PHRA, a plaintiff must allege that: "(1) he engaged in activity protected by the statute; (2) the employer took adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."[20] Here, Lincoln argues that Plaintiff failed to satisfy the first and third elements of a retaliation claim.

First, Lincoln argues that in defending himself against Dodd's allegations, Plaintiff was not engaged in protected activity. Plaintiff, however, relies on the language regarding retaliation for assistance or participation in an investigation, proceeding or hearing (the "participation clause"). His argument is that, although he was the target of an investigation into charges of racial discrimination, his participation in that investigation was in fact protected activity.

This appears to be an issue of first impression for this Court. In Erickson v. Marsh & McLennon Co. Inc.,[21] the New Jersey Supreme Court applied the New Jersey Law Against Discrimination ("NJLAD"), an anti-discrimination statue with a participation clause functionally

---

[18] 42 U.S.C. § 2000e-3(a).

[19] Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others. *See Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997). The language of the PHRA is also substantially similar to these anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.")

[20] Moore v. City of Philadelphia, 461 F.3d 331, 340 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

[21] Erickson v. Marsh & McLennon Co. Inc., 117 N.J. 539 (1990).

6

identical to that in Title VII and the PHRA.[22] It ruled that an employee defending against charges that he sexually harassed a co-worker is not engaged in protected activity under the NJLAD.[23] It reasoned, in part, that an employer's failure to investigate allegations of discrimination and take remedial action exposes it to litigation under federal law, and the plaintiff's reading of the law would expose an employer to litigation from the alleged illegal actor any time it fulfilled its obligation to investigate and take remedial action to address illegal discrimination in the workplace. The Third Circuit has cited the principal set forth in Erickson with approval.[24] As the participation clauses in both the NJLAD and the PHRA are interpreted as identical to the Title VII participation clause,[25] the New Jersey Supreme Court holding in Erickson is instructive in this Title VII/PHRA case.

Given the remedial intent of federal and state anti-discrimination laws, and the need to avoid interpreting statutory language literally when doing so will produce an absurd result,[26] the Court cannot interpret the language of Title VII and the PHRA to protect those in Plaintiff's position. Thus, an employee defending against charges that he discriminated against a co-worker is not engaged in protected activity under Title VII or the PHRA.[27] Plantiff cannot establish a *prima facie*

---

[22] Drinkwater v. Union Carbide Corp., 904 F.2d 853 (3d Cir. 1990) (Title VII standards are applied when analyzing retaliation cases under NJLAD); Fogleman v. Mercy Hosp., Inc., 283 F.3d at 567 (Title VII standards are applied when analyzing retaliation cases under the PHRA).

[23] Erickson, 117 N.J. at 560

[24] Drinkwater, 904 F.2d at 864.

[25] Fogleman, 283 F.3d at 567; Drinkwater, 904 F.2d at 865.

[26] Rowland v. California Men's Colony, 506 U.S. 194, 200 (1993).

[27] Plaintiff argues that he had a "mixed motive" in participating in the EEOC/PHRA investigation: he participated in his own defense, but also briefed two members of his staff at his employer's request. This does not change the analysis. He was not participating as a complainant, attempting to collect evidence of discrimination, acting as a witness to discrimination, nor otherwise participating in furtherance of the goals of the remedial statutes.

7

case of retaliation.

Having found that Plaintiff's participation in the hearing process was not protected activity, the Court need not reach Lincoln's argument that Plaintiff establishes no genuine issue of material fact as to the causation element of a *prima facia* claim for retaliation. However, as an alternative basis for its ruling, the Court will address this element as well.

Plaintiff relies on the temporal proximity between his participation in a brief meeting to prepare for the fact-finding hearing and his termination five hours later to create an inference of retaliation. While the Court can sometimes infer a causal link from a close temporal relationship between the protected activity and the adverse employment action,[28] inferences of causation are fact-specific and any other facts which support or contradict such an inference must be considered.[29] Temporal proximity, standing alone, is not always suggestive of causation.[30]

For the purpose of this motion, Lincoln does not dispute the temporal proximity between the preparatory meeting and Plaintiff's termination. However, it points to its intervening interviews with four of Plaintiff's female employees, all of whom, for the first time, affirmed that Plaintiff was creating a hostile and threatening work environment, as creating a clear inference that his termination was for good cause and not in retaliation for his participation in the investigation. Plaintiff does not dispute that these interviews occurred, nor does he dispute Lincoln's recitation of the information gathered from the four women during these interviews.

Plaintiff argues that the Court must deny summary judgment because he has raised an issue

---

[28] Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997).

[29] Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

[30] Id.

8

of material fact as to whether his participation in the discrimination investigation or his subordinates' reports about his discriminatory behavior were the true basis for his termination. However, the parties do not dispute the material facts underlying <u>either</u> proposed cause for the termination. To survive the motion for summary judgment as to the causation element of retaliation, the Plaintiff must either submit evidence that negates Lincoln's evidence regarding causation or demonstrate that Lincoln's factual evidence is insufficient to establish causation.[31] Plaintiff has not done either of these things. The Court need not rely on an *inference* of causality based only on proximity in time when there is uncontroverted evidence of other causal factors which clearly justify the termination. Therefore, the Court finds that Plaintiff has not established a genuine issue of material fact as to the causation element of his *prima facie* case of retaliation.

    An appropriate Order follows.

---

[31] <u>Celotex Corp.</u>, 477 U.S. at 331.